UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

UNITED STATES OF AMERICA

       - against -

DAVE MINTER,

                  Defendant.
────────────────────────────────

20 Cr. 389 (JGK)

<u>MEMORANDUM OPINION</u>
<u>AND ORDER</u>

JOHN G. KOELTL, District Judge:

The defendant, Dave Minter, was indicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. The defendant now moves to suppress a firearm and any other evidence seized during a car search and as a result of the subsequent arrest of the defendant. Alternatively, the defendant requests an evidentiary hearing. For the reasons explained below, the motion to suppress is **denied** and the request for a suppression hearing is also **denied**.

I

The following facts are drawn from the sworn Complaint and the initial discovery produced by the Government.

On or about April 26, 2020, at approximately 10:00 p.m., three New York Police Department ("NYPD") officers (the "Officers"), Fitz Edouard,[1] Joel Bolivar, and John Moise, observed a vehicle (the "Car") that was double-parked and

---

[1] The papers and certain documents refer to Officer Fitz Edouard as Officer Fitz and the Court adopts the name for ease of reference and to avoid confusion.

surrounded by three individuals drinking alcohol, with the driver's door open. Compl., ECF No. 1, ¶ 8a; Cohen Decl. Ex. A, ECF No. 18 ("NYPD Compl."), at 8; Cohen Decl. Ex. C ("Officer Interviews"), at 2, 7. The Officers were in an unmarked car and wearing plain clothes. Officer Interviews at 2. The Officers pulled alongside the Car whose interior lights were on; the Officers observed the defendant in the back seat of the Car. Compl. ¶ 8b; NYPD Compl. at 8. The defendant "appeared surprised," Compl. ¶ 8c, "like he had seen a ghost," when he saw the Officers, Officer Interviews at 4. He immediately bent behind the back of the passenger seat as if he were placing an object underneath the seat and then quickly left the Car. Compl. ¶ 8c; NYPD Compl. at 8. The defendant was immediately stopped by the Officers. NYPD Compl. at 8; Officer Interviews at 4. Officer Bolivar was standing by the rear of the vehicle with the defendant, while Officer Fitz looked into the Car and saw a firearm on the floor of the back seat behind the passenger seat, in the place where the defendant had bent down. Compl. ¶ 8d; Officer Interviews at 2, 4. Officer Fitz then told Officer Bolivar "92, which means arrest." Officer Interviews at 5. Officer Bolivar asked the defendant to put his hands behind his back. Officer Interviews at 2. The defendant attempted to flee but only made it a few feet before Officer Bolivar apprehended him and placed him under arrest. Id.; Compl. ¶ 8e. One of the

other individuals, who identified herself as the owner of the vehicle, said that she was drinking; she was arrested and given a criminal court summons and a parking summons. NYPD Compl. at 2.  When the defendant was arrested, he was wearing the same clothing as a suspect who was captured by surveillance video firing five gunshots in the air several hours before the defendant's arrest. Compl. ¶¶ 5-7.

## II

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-recognized exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). The Government bears the burden of proving, by a preponderance of the evidence, that the officers' actions were lawful. See United States v. Echevarria, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010) (collecting cases). However, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). Accordingly, a defendant can challenge the government's action under the Fourth Amendment only if the defendant "had a reasonable expectation of

privacy in the place or object searched," <u>United States v.</u>
<u>Santillan</u>, 902 F.3d 49, 62 (2d Cir. 2018) (internal citations
omitted), <u>cert. denied</u>, <u>Santillan v. United States</u>, 139 S. Ct.
1467 (2019), or if the defendant was "seized by the police."
<u>Brendlin v. California</u>, 551 U.S. 249, 254 (2007). If a defendant
can establish an unlawful search or seizure, "evidence obtained
from or as a consequence of lawless official acts" must
typically be excluded as "fruit of the poisonous tree,"
<u>Costello v. United States</u>, 365 U.S. 265, 280 (1961), subject to
certain limited exceptions. <u>See, e.g.</u>, <u>Nix v. Williams</u>, 467 U.S.
431, 444 (1984).

### III

The defendant first argues that the stop of the Car and the
defendant resulted in an unlawful seizure, and all evidence
collected should be suppressed as fruit of the poisonous tree.
The Government argues that the defendant does not have standing
to challenge the stop of the Car and that, in any event, both
the stop of the Car and the stop of the defendant outside the
Car were justified under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), based
initially on the suspected traffic violations when the Officers
fist observed the Car and then by the Officers' observations of
the defendant's conduct.

"Temporary detention of individuals during the stop of an
automobile by the police, even if only for a brief period and

4

for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." <u>Whren v. United States</u>, 517 U.S. 806, 809-10 (1996).[2] A driver and passengers alike are seized "from the moment [the] car c[omes] to a halt on the side of the road." <u>Brendlin</u>, 551 U.S. at 263. "Therefore, traffic stops must satisfy the Fourth Amendment's reasonableness limitation, which requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." <u>United States v. Gomez</u>, 877 F.3d 76, 86 (2d Cir. 2017). Even if lawful at its inception, a traffic stop "can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005). "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." <u>Rodriguez v. United States</u>, 575 U.S. 348, 350 (2015). At the same time, "a traffic stop may be extended beyond the point of completing its mission if an officer develops a reasonable suspicion of criminal activity." <u>United States v. Wallace</u>, 937 F.3d 130, 138 (2d Cir. 2019).

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

The defendant argued initially that the defendant "exited the backseat of [the Car] before the Officers initiated the car stop." Def.'s Mem. at 6, ECF No. 17. In order to bolster his argument that he has standing to challenge the car stop, the defendant subsequently argued that the car stop occurred before the defendant exited the Car. March 5, 2021 Tr. at 17. It is somewhat unclear when in the course of pulling up to the double-parked car the car stop began. But it is unnecessary to pinpoint that time because its only significance is to determine whether the defendant has standing to challenge the car stop. Because the stop was constitutional, the exact time it began is not significant in this case.[3]

The Officers had reasonable suspicion to justify the car stop and its continuation. "Reasonable suspicion" exists when the officer is "in possession of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." United States v. Ojudun, 915 F.3d 875, 882 (2d Cir. 2019). "Although a mere 'hunch' does not

---

[3] There is reason to question whether the car stop occurred before the defendant left the Car and whether the defendant has standing to challenge the car stop. This is not a case like Brendlin, where the police stopped a moving car and where the Supreme Court noted that "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission." Brendlin, 551 U.S. at 257. And in Brendlin, the Supreme Court noted that the passenger submitted to police authority "by not getting up to run away," and "staying inside." Id. at 262. In this case, the defendant did the opposite. He left the car and then he did attempt to flee. See also United States v. Cedeño, 437 F. App'x 8, 11 (2d Cir. 2011) (holding that a defendant could not challenge admission of evidence from a car's trunk under Brendlin because the car was already parked when the police approached). However, it is unnecessary to reach this issue because it is plain that the car stop was constitutional.

create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Kansas v. Glover, 140 S. Ct. 1183, 1187 (2020).

When the Officers first noticed the Car, they observed that it was double-parked and therefore the Officers had reasonable suspicion that the driver of the Car was violating New York City and New York State laws that prohibit double parking. See Fernandez v. City of New York, No. 19-CV-1862, 2020 WL 4266931, at *3 (S.D.N.Y. July 24, 2020); Reinoso v. Intact Fin. Corp., No. 10-CV-1015, 2010 WL 4967819, at *3 (S.D.N.Y. Nov. 30, 2010). And the driver of the Car was in fact issued a parking summons as well as a criminal court summons. The Officers' reasonable suspicion was not undermined by a possible defense to the violation that the driver of the Car could have had, see Fernandez, 2020 WL 4266931, at *3, a possible mistake by the Officers about the relevant facts, see United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009), or the fact that the traffic violation may have been a pretext for another reason to stop the Car, see Whren, 517 U.S. at 813; Gomez, 877 F.3d at 97. And the only action that the Officers took on the basis of the potential traffic violation, before making additional observations that expanded the scope of their suspicion, was to pull alongside and

stop next to the Car. Such action was proportional to the perceived traffic violation.

Once they pulled up next to the Car, the Officers observed additional facts from the defendant's conduct that caused them to develop a reasonable suspicion of further criminal activity: (1) the defendant appeared "surprised," "like he had seen a ghost" when he saw the Officers' car, (2) the defendant leaned over and appeared to be putting something on the ground under the passenger seat, and (3) the defendant exited the Car quickly as if to flee. This "series of acts, each of them perhaps innocent in itself . . . taken together warranted further investigation." Terry, 392 U.S. at 22. Indeed, "persons suspected of discarding criminal evidence are regularly detained pursuant to Terry while police search for the discarded item to confirm or dispel their suspicions." United States v. Bailey, 743 F.3d 322, 337 (2d Cir. 2014) (collecting cases). And the Supreme Court has recognized that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Further, it is well established that "[a] traffic stop may be extended for investigatory purposes if an officer develops a reasonable suspicion of criminal activity supported by specific and articulable facts." United States v. Foreste, 780 F.3d 518, 523 (2d Cir. 2015). Therefore, the Officers were justified in

stopping the defendant outside the Car to investigate what he dropped on the floor of the Car. Moreover, the investigatory stop, prior to the discovery of the firearm and the eventual arrest, was brief. Because the Officers acted to "confirm or dispel their suspicions quickly," United States v. Sharpe, 470 U.S. 675, 686 (1985), it cannot be said that the "detention [was] too long in duration to be justified as an investigative stop," id. (finding that a twenty-minute stop was justified); see also Bailey, 743 F.3d at 339 (concluding that the police acted within the permissible scope of a Terry stop when they detained the defendant for ten minutes to search the premises he had recently departed to establish probable cause for an arrest).

Because the officers had reasonable suspicion to justify their conduct at every point of the encounter, the evidence retrieved should not be suppressed as the fruit of an unconstitutional stop.

**IV**

The defendant also argues that the evidence derived from the search of the Car should be excluded because the search was unlawful. The Government contends that the defendant does not have standing to challenge the search of the Car and, in any event, that the search was justified as a lawful protective search under Michigan v. Long, 463 U.S. 1032, 1049 (1983).

A defendant "seeking suppression of evidence found without a search warrant must show that he had a reasonable expectation of privacy in the place or object searched." Santillan, 902 F.3d at 62. It is well established that a passenger in a car he does not own does not have a reasonable expectation of privacy in the car. See Rakas, 439 U.S. at 148-49 (observing that "a passenger qua passenger simply would not normally have a legitimate expectation of privacy" in the "area under the seat of the car in which they were merely passengers"); Santillan, 902 F.3d at 63 (concluding that a non-owner passenger "did not have an objectively reasonable expectation of privacy in the area under or behind the passenger seat").

In this case, the defendant was at most a passenger in a car he did not own when the police encounter first started. Further, by the time he was stopped by the Officers, the defendant was no longer a passenger in the Car, making any expectation of privacy in the Car even more attenuated. Accordingly, the defendant lacks standing to challenge the search of the Car.

Moreover, "[w]hen a person voluntarily abandons property . . . he forfeits any reasonable expectation of privacy that he might have had in the property. The Fourth Amendment's protections, therefore, do not extend to abandoned property." United States v. Lee, 916 F.2d 814, 818 (2d Cir. 1990). Here,

10

the defendant left the firearm in a car that did not belong to him and where he lacked a reasonable expectation of privacy. The firearm was therefore abandoned and not entitled to Fourth Amendment protections. See California v. Greenwood, 486 U.S. 35, 40-41 (1988) (no reasonable expectation of privacy in trash left in a public place); Abel v. United States, 362 U.S. 217, 241 (1960) (objects left behind in a hotel room were considered abandoned property).

And because he abandoned the firearm before he was stopped by the Officers outside the Car, the abandonment was not a product his seizure. See California v. Hodari D., 499 U.S. 621, 629 (cocaine abandoned before he was seized was not the fruit of a seizure); United States v. Swindle, 407 F.3d 562, 573 (2d Cir. 2005) ("The drugs that [the defendant] abandoned before being apprehended were thus not the product of a Fourth Amendment seizure."). As a result, the defendant also lacks standing to challenge the seizure of the firearm.

Moreover, the Government argues persuasively that the search was justified as a protective search under Long, 463 U.S. at 1049. In Long, the Supreme Court held that

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the

suspect is dangerous and the suspect may gain immediate control of weapons.

Id. The Supreme Court rejected the argument that it was unreasonable for two police officers who had detained a suspect outside his vehicle to fear that the suspect could injure them, noting that a suspect "may, despite being under the brief control of a police officer . . . break away from police control and retrieve a weapon from his automobile," or, if not arrested at the conclusion of the investigative detention, "be permitted to reenter his automobile, [where] he will then have access to any weapons inside." Id. at 1051–52.

The same facts that justified the stop of the defendant outside the vehicle justify a protective search of the Car under Long. The defendant made a gesture consistent with an attempt to hide a firearm and attempted to leave the Car quickly when the Officers pulled up to the Car. Based on these facts, the Officers had reasonable suspicion to conduct a protective search of the area of the vehicle where they saw the defendant lean down. See United States v. Paulino, 850 F.2d 93, 94, 98 (2d Cir. 1988) (concluding that where an officer observed a defendant "in the back seat moving his torso and bending over as if placing an object on the floor," such "furtive movement provided a legal basis for the protective search"); United States v. Torres, No. 10-CR-1159, 2011 WL 2209144, at *7 (S.D.N.Y. June 7, 2011) ("[Officers] saw the defendant make a suspicious movement toward

the dashboard. That movement alone was sufficient to justify a protective search of the dashboard compartment.").

In arguing that Long does not apply, the defense emphasizes that lawful protective car searches typically involve a stop of a vehicle and a defendant being ordered out of a car so that the police could ensure their own safety during the car stop, whereas here, the defendant had already exited the Car before the encounter started. Aside from the obvious inconsistency with the defendant's argument that he was stopped while inside the Car for the purposes of challenging the Car stop, this distinction is both inaccurate and unpersuasive. In Long, the defendant exited the vehicle after an accident and was not ordered out of the vehicle by the police. See Long, 463 U.S. at 1035. And the fact that the defendants were ordered out of the vehicles in Paulino and Torres rather than exiting voluntarily played no role in the protective search analyses. What was significant to the analyses in Long and its progeny and is true here is that the officers observed conduct by the defendants that gave them articulable, concrete grounds for reasonable suspicion. Therefore, the reasoning in Long applies with equal force regardless of why the defendant was outside the vehicle: the Officers were justifiably worried that the defendant may "break away from police control and retrieve a weapon from [the Car]," or that "if the [defendant was] not placed under arrest,

13

he [would] be permitted to reenter [the Car], and he [would] then have access to any weapons inside." Long, 463 U.S. at 1051-52. Accordingly, the search here was justified as a protective search under Long.

Because the defendant does not have standing to challenge the constitutionality of the search and the evidence obtained from it, and because, in any event, the search was justified as a protective search, the evidence retrieved should not be suppressed as the fruit of an unconstitutional search.

**V**

Finally, the defendant argues that evidence recovered from the arrest, such as the defendant's clothing, should be suppressed. "[T]he 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a consequence of lawless official acts." Costello, 365 U.S. at 280. However, there was no Fourth Amendment violation in this case. As explained above, neither the stop of the Car, nor the stop of the defendant, nor the search of the Car violated the Fourth Amendment. It follows that the discovery of the weapon, which supplied probable cause for the defendant's arrest, did not derive from "lawless official acts." Therefore, there is no basis to suppress the evidence retrieved as a result of the defendant's arrest.

Accordingly, the defendant's motion to suppress is **denied**.

## VI

The defendant requested that the Court hold a suppression hearing before deciding the motion to suppress. The Government responds that there is no basis for a hearing because the defense did not dispute any of the essential facts that supported the stop and the search that yielded the evidence at issue.

The defendant is not entitled to an evidentiary hearing unless he can show that there is a contested issue of material fact with respect to the issue for which the hearing is requested. See United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). The defendant's moving papers must be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." Id. Courts in the Second Circuit ordinarily require the defendant to "submit a sworn affidavit from one with personal knowledge of the underlying facts." United States v. Dewar, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007); see also United States v. Martinez, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014). Statements submitted by an attorney in motion papers before a district court "cannot by themselves create a factual issue." United States v. Mottley, 130 F. App'x 508, 510 (2d Cir. 2005); United States v. Mason, No. 06-CR-80, 2007 WL 541653, at *2 (S.D.N.Y. Feb. 16, 2007)

("An affidavit of defense counsel who does not have personal knowledge of the facts and circumstances surrounding the events at issue is an insufficient basis for an evidentiary hearing.").

In this case, the defendant did not submit an affidavit and, instead, contends that there are sufficient questions of fact generated by other evidence in the record, such as body-camera videos and police paperwork, to justify a hearing. The defendant also argues that he lacks requisite personal knowledge to submit an affidavit because he was being detained away from the Car such that he could not provide a first-hand account of what happened in the Car.

These explanations are not persuasive. The existence of the traffic violation provided a sufficient basis to stop the Car and there is no evidence that the traffic violation did not exist. The Officers also had reasonable suspicion to stop the defendant and search the Car based on the defendant's actions as well as on the basis of a protective search under Long. All of these facts could have been controverted based on an affidavit supported by personal knowledge but were not. There are all facts about which the defendant has first-hand knowledge but he has failed to contradict the Officers' account as reflected in the sworn Complaint, the Police Department Complaint, and the interview notes of the Officers.

To the extent that the defense argues that the traffic stop was merely "pretextual," this argument also fails to provide a basis for a hearing. It is well established that the constitutional reasonableness of police conduct does not depend on the actual motivations of the individual officers involved. See Whren, 517 U.S. at 813; Gomez, 877 F.3d at 97 ("[I]t is well established that an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance.").

Because all the facts material to the determinations regarding reasonable suspicion and standing remain undisputed by the defendant, a suppression hearing is not warranted. See United States v. Ferrer, 765 F. App'x 622, 625 (2d Cir. 2019) ("[The defendant] failed to create a dispute of fact, and as a result, a hearing was not warranted."); United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (concluding that a hearing is not required when the defendant's statements "do not present disputed factual issues").

Accordingly, the request for a suppression hearing is **denied.**

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The defendant's motion to suppress is **denied** and the request for a suppression hearing is **denied.** The Clerk is directed to close docket no. 16.

**SO ORDERED.**

**Dated:**    **New York, New York**
            **March 23, 2021**              /s/ John G. Koeltl
                                        _____
                                            **John G. Koeltl**
                                    **United States District Judge**